Samuel James JEFFERSON *v.* STATE of Arkansas

CR 02-92 76 S.W.3d 850

Supreme Court of Arkansas
Opinion delivered June 6, 2002
[Petition for rehearing denied July 11, 2002.*]

---

* IMBER, J., not participating.

*William R. Simpson, Jr.*, Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

J IM HANNAH, Justice. Appellant Samuel James Jefferson appeals his conviction for possession of cocaine. Jefferson asserts that the trial court erred when it denied his motion to suppress evidence because the stop and detention were not based upon reasonable suspicion, and the evidence was obtained as a result of the subsequent illegal detention. The pretrial motion was heard on May 15, 2000, and the trial court issued its ruling denying the motion at the conclusion of that hearing. The case then went to trial, and Jefferson renewed his motion for suppression, which was again denied.

We hold that the encounter with police was not consensual, but rather that the police intended to and did stop Jefferson. We further hold, however, that the police had a reasonable suspicion to make the stop. The totality of the circumstances, including the late hour, the area being residential, the particular area where drugs and prostitution were known problems, the incidence of crime in the area, the fact appellant had just come from between two trailers, and appellant's gait and manner, as well as an apparent effort of appellant to avoid identification or confrontation rises to a level sufficient to support the officers' suspicion that a crime had been or was about to be committed. In addition, when Jefferson began walking toward the police officers, he put his hand in his right front pocket. This act bolstered the officers' suspicion that a crime had been or was about to be committed as well as added to their concern about their safety. The decision of the trial court is affirmed.

*Facts*

This case arises from a pedestrian encounter between Samuel Jefferson and officers of the Little Rock Police Department in the early morning hours of August 19, 1999. Officer Charles Allen testified that the police department had received numerous complaints about narcotics, loitering for narcotics, and prostitution around the Vorhees Trailer Park.

Between 2:00 and 2:15 a.m. on August 19th, Little Rock Police Officers Charles Johnson and Allen entered the Vorhees Trailer Park in their marked patrol car. Their headlights were

turned off because they were entering a high-crime area. The trailer park only contains eight trailers. Vehicular traffic cannot pass through the trailer park because it is in a cul-de-sac, but foot traffic does pass through because holes have been cut in the fences.

According to Officer Johnson, upon pulling into the trailer park they saw Jefferson out walking in the roadway. It appeared he had just come from between two trailers. The officers testified that upon seeing their patrol car, Jefferson appeared startled and changed his direction of travel to put distance between them, and he quickened his pace. The officers turned their headlights on as Jefferson passed in front of their car.

Both officers testified that officer Allen stepped from the patrol car and called to Jefferson to come to the car. They also both testified that Jefferson did not turn to start toward the patrol car when Allen first spoke to him. It was only when Allen told Jefferson to come to the patrol car the second time that he turned and started toward them.

Officer Johnson testified that when Jefferson turned to walk toward them, he slipped his right hand in his right front pant's pocket, and that Officer Allen drew his weapon. Jefferson testified that the officers were mistaken, that he did not put his hand in his pocket, but rather he was striking his right leg because of pain from a health disorder. Officer Allen testified that Jefferson had his right hand in his right front pant's pocket until he was close to the right front of the patrol car when he made a motion as if he were about to turn away, and by pulling his hand out of his pocket, he dropped something to the ground. According to Officer Allen's testimony, upon seeing Jefferson drop something to the ground they immediately took him into custody.

Officer Johnson testified that when the ground was searched they found a pill bottle and nothing else. According to Officer Allen's testimony, the pill bottle contained ten to fifteen pieces of off-white rock-like substance later identified as crack cocaine. Jefferson testified that he had no pill bottle and that the officers were lying when they said he had dropped it. He also testified that the videotape made by the systems in the patrol car was shown to him by the officers, that it showed he was striking his leg and had not

put his hand in his pocket, but that they told him they were going to charge him anyway. The videotape was not available in this case.

### Standard of Review

In reviewing a ruling denying a defendant's motion to suppress, we make an independent determination based on the totality of the circumstances and view the evidence in the light most favorable to the State. We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997); *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). When we grant a petition to review a decision of the court of appeals, we treat the matter as if the appeal had been originally filed in this court. *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998). This court defers to the trial court in assessing witness credibility. *E.g., Rankin v. State*, 338 Ark. 723, 1 S.W.3d 14 (1999); *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998); *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998); *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001).

### Search and Seizure

The first issue to be determined is just what sort of encounter this was between Jefferson and police, and based thereon, whether the Fourth Amendment was implicated and complied with. The State argues that the fact that Jefferson was apparently emerging from between two trailers and changed direction and speed of travel upon seeing the patrol car, the lateness of the hour, the area being residential, and the area being a high crime area gives rise to reasonable suspicion that a crime had been or was about to be committed. The State also argues alternatively that Jefferson was under no obligation to comply with police orders and that, therefore, the encounter was consensual and did not implicate the Fourth Amendment in any way. Jefferson argues he was detained by police without reasonable suspicion and that, therefore, the trial court was in error when it refused to suppress the evidence.

■ There is nothing in the Constitution that prevents the police from addressing questions to any individual. *Baxter v. State*, 274 Ark. 539, 543, 626 S.W.2d 935 (1982) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Not all personal intercourse between police and citizens involves "seizures" of persons under the Fourth Amendment. *Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990) (citing *Terry, supra*). *Terry* dealt with a search for weapons, but its holding has broader implications.

■ *Terry* did specifically involve the issue of "whether it is always unreasonable for a policemen to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." *Terry* 392 US *at* 15. In *Terry*, the United States Supreme Court concluded:

> Each case of this sort will, of course, have to be decided on its own facts. We merely hold today that where a policemen observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policemen and makes reasonable inquires, and nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
>
> Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may be properly be introduced in evidence against the person from whom they were taken.

*Terry* 392 US *at* 30.

In the same year in *Sibron v. New York*, 392 U.S. 40 (1968), the United States Supreme Court further developed the law in dealing with a police officer who approached a suspected drug suspect and said, "You know what I am after," upon which Sibron put his right hand in his pocket. The officer simultaneously reached into Sibron's pocket and found glassine envelopes of heroin. The United States Supreme Court found the search unlawful

because the officer was seeking narcotics rather than acting from fear for his own safety.

The United States Supreme Court jurisprudence has placed police citizen encounters into three tiers or categories:

> First, there are communications between officers and citizens that are consensual and involve no coercion or restraint of liberty. Such encounters are outside the scope of the Fourteenth Amendment. Second, there are the so-called *Terry*-type stops. These are brief, minimally intrusive seizures but which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity. Third, there are highly intrusive, full-scale arrests, which must be based on probable cause.

*United States v. Poitier*, 818 F.2d 679, 681–682 (8ᵗʰ Cir. 1987). *See also, United States v. Hernandez*, 854 F.2d 295 (8ᵗʰ Cir. 1988); *United States v. Wallraff*, 705 F.2d 980 (8ᵗʰ Cir. 1983).

This court in *Thompson v. State*, 303 Ark. 407, 797 S.W. 2d 450 (1990), cited *Hernandez, supra*, in stating the following:

> Police-citizen encounters have been classified into three categories. *See U.S. v. Hernandez*, 854 F.2d 295 (8th Cir. 1988). The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the fourth amendment. *Id*. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. *Id*. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause. *Id*.

*See also, Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997).

■ ■ The issue in this case is whether the encounter with Jefferson falls within the first or the second tier. Police observed

Jefferson in the roadway and concluded he had just emerged from between two trailers. His testimony confirmed this. They also noted that upon seeing the patrol car, Jefferson seemed startled and that he then changed directions and increased his pace. Because of this the officers decided to stop Jefferson and did so by stepping out of the car and issuing a command that he stop and come to them. It is readily apparent that this action by the police may not be characterized as merely approaching an individual on a street to ask if he is willing to answer some questions. *Thompson*, 303 Ark. 407. A person has been seized within the meaning of the Fourth Amendment only if, in view of all circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544 (1980). If there is no detention — no seizure within the meaning of the Fourth Amendment — then no constitutional rights have been infringed. *Florida v. Royer*, 460 U.S. 491 (1983). Police can be said to have seized an individual "only if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567 (1988) (citing *Mendenhall, supra*). The United States Supreme Court has also characterized it as "so long as a reasonable person would feel free" to disregard the police and go about his business, *California v. Hodari D.*, 499 U.S. 621, 628 (1991), the encounter is consensual, and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless is loses its consensual nature. *Florida v. Bostwick*, 501 U.S. 429 (1991). A reasonable person would not have believed he was free to leave once the police had turned on their lights and issued a command to stop and come to their patrol car. *See Chesternut*, 486 U.S. *at* 575. Therefore, this encounter was not consensual and does implicate the Fourth Amendment.

■■ Our analysis now must be whether the facts of this case meet the requirements to support Jefferson's restraint for a short period of time. To support this, there must be an "articulable suspicion." *Thompson* 303 Ark. 407. An articulable or reasonable suspicion requires "facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion." *Stewart*, 332 Ark. *at* 145. *See also*, Ark. R. Crim P. 3.1 (2002).

Arkansas Rule of Criminal Procedure 2.1 defines reasonable suspicion as:

> . . .a suspicion based upon facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Arkansas Code Annotated Section 16-81-203 (1987) provides further guidance in setting out factors to be considered in determining whether an officer has grounds to "reasonably suspect." Relevant to this case, they include:

> (2) The gait and manner of the suspect;
>
> * * *
>
> (6) The time of day or night the suspect if observed;
>
> * * *
>
> (8) The particular streets involved;
>
> * * *
>
> (11) The suspect's proximity to known criminal conduct;
> (12) Incidence of crime in the immediate neighborhood;
>
> * * *
>
> (14) Apparent effort of the suspect to avoid identification or confrontation by the police.

Ark. Code Ann. 16-81-203.

Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119 (2000). Whether a person flees is also relevant. *Id.* The United States Supreme Court noted that while a person is free to ignore police and go on about their business when approached, "unprovoked flight" is the exact opposite of 'going about one's business,' and as such there was suspicion to justify further investigation. Here, Jefferson changed directions and quickened his pace apparently intending to put more distance between he and the police. His reaction to police was immediate. Further, upon command, he did not immediately turn and begin walking toward

the police car as commanded, but he did upon the second such command.

At the time the officers decided to stop Jefferson, they knew that he was startled by seeing them, that he had changed directions in walking to move away from them, that he quickened his pace, and that he was in a residential high-crime area in the early hours of the morning. Officer Johnson testified that Jefferson acted "squirrely" when he was arrested, but that is not relevant as it occurred after the stop.

The officers testified that this was an area known for drug trafficking and prostitution. They also testified that they had been receiving complaints about the area, apparently from residents. Finding appellant apparently coming out from between two residential trailers at 2:00 a.m. certainly should give rise to suspicion that something illegal was afoot. This is especially so when the area is considered, the history of the area is considered, and complaints of persons who likely had good reason to fear for the safety of their neighborhood is considered. Also, as Jefferson was walking toward the police officers he put his hand in his right front pocket, which gave the police officers good reason to be concerned about their safety. There was reasonable suspicion that a crime had been or was about to be committed.

 The trial court correctly denied the motion to suppress. The issue of abandonment was also raised by the State as a reason that the pills should not be excluded. Because we hold that there was reasonable suspicion for the stop, we need not discuss whether the acts in this case constitute abandonment.

The trial court is affirmed.

IMBER, J., not participating.