Cameron BRAZWELL *v.* STATE of Arkansas

CR 02-1129 119 S.W.3d 499

Supreme Court of Arkansas
Opinion delivered October 2, 2003

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Cameron Brazwell appeals his convictions for both simultaneous possession of drugs and a firearm and possession of drugs with intent to deliver. He argues that the trial court erred in denying his motion to suppress evidence. He also submits that, because his conviction for possession of drugs with intent to deliver is a lesser-included offense of simultaneous possession of drugs and a firearm, he was illegally being convicted and punished twice for the same offense. We agree that the trial court should have granted Brazwell's motion to suppress.

On March 22, 2002, Brazwell was charged with three offenses: 1) simultaneous possession of drugs and firearms, *see* Ark. Code Ann. § 5-74-106(a)(1) (Repl. 1997); 2) possession of cocaine with intent to deliver, *see* Ark. Code Ann. § 5-64-401(a)(1)(i) (Supp. 2001); and 3) loitering for the purposes of distributing a controlled substance, *see* Ark. Code Ann. § 5-71-

213(a)(6) (Repl. 1997). Brazwell filed a motion to suppress a gun and four small plastic bags of cocaine rocks that were seized from his person when he was arrested, alleging that the arresting officer lacked reasonable suspicion to detain and search him.

 In reviewing a ruling denying a defendant's motion to suppress, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). We defer to the trial court in assessing the credibility of witnesses. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001).

At the suppression hearing in this case, Little Rock Police Detective Christian Sterka testified that, on January 15, 2002, he was working in the Little Rock Police Department's patrol division. Sterka was patrolling his district, which included the 4400 block of West 12th Street. In that block, there is a strip mall that contains a liquor store and an E-Z Mart. Large signs posted on those stores warned, "No Loitering, No Sitting, No Standing." Sterka testified that the police had received numerous complaints from both store owners about loitering and narcotics activity. Shortly before 10:00 p.m., Sterka pulled into the stores' parking lot and observed Brazwell sitting on the window ledge of the liquor store. Sterka said that Brazwell did not appear to be of legal drinking age, and he was sitting directly beneath one of the "No Loitering" signs. Sterka approached him "for purposes of identification and the likelihood of issuing him a citation for loitering."

As Sterka exited his vehicle and began approaching Brazwell, Officer Sterka noticed a large bulge on Brazwell's right thigh. Brazwell began rubbing the bulge, which caused Sterka to be concerned for his safety; Sterka testified that it was a fairly dark, poorly lit area, and he could not tell what the bulge was. Sterka asked Brazwell to approach the police vehicle and place his hands on the car. As Brazwell approached the police car, he spontaneously said, "Officer, I'm going to be straight. I've got something on me." Sterka asked what it was, and Brazwell said that he had a gun inside his pants pocket. Brazwell was wearing two pairs of pants, and the gun was in the left pants pocket of the inside pair of pants. The bulge, however, had been on Brazwell's right thigh, and Sterka later determined the bulge was caused by a bandana. Sterka had not noticed the gun until Brazwell mentioned it.

After retrieving the gun, Sterka took Brazwell into custody for being in possession of the weapon. During a search incident to the arrest for the gun, Sterka found four individually wrapped packages of crack cocaine in the outside pair of pants. Sterka arrested Brazwell on drug charges, as well. After Sterka read Brazwell his *Miranda* rights, Brazwell said that he had been on the parking lot in order to deliver the handgun to another individual, and that the crack cocaine was for his personal use.

On cross-examination, Sterka asserted that the only reason he was going to search Brazwell was because the bulge, which Brazwell was rubbing, made him "uncomfortable." Other than that, however, Sterka said that Brazwell did not behave threateningly, act like he was going to run, or do anything else that would be inappropriate or illegal. The State filed a three-count information against Brazwell on March 22, 2002, charging him with simultaneous possession of drugs and firearms, possession of a controlled substance with intent to deliver, and loitering for narcotics.

■ As noted above, on appeal, Brazwell argues that his motion to suppress the gun and drugs should have been granted because Sterka lacked reasonable suspicion to stop or detain him. Thus, the question this court must answer is whether Sterka had the authority, under Ark. R. Crim. P. 3.1, to stop and detain Brazwell. Rule 3.1 provides in pertinent part as follows:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he *reasonably suspects* is *committing, has committed, or is about to commit* (1) *a felony*, or (2) *a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property*, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

(Emphasis added.) The rule is precise in stating that the reasonable suspicion must be tied to commission of a felony or a misdemeanor involving forcible injury to persons or property. *See Laime, supra.*

■ The crime Sterka suspected Brazwell of committing was loitering, an offense defined in Ark. Code Ann. § 5-71-213(a)(1)-(9) (Repl. 1997); Brazwell was ultimately charged with loitering for narcotics under § 5-71-213(a)(6). Loitering is a Class C misdemeanor. Ark. Code Ann. § 5-71-213(e) (Repl. 1997).

Section 5-71-213(a)(6) states that a person commits the offense of loitering if he "[l]ingers or remains in a public place for the purpose of unlawfully buying, distributing, or using a controlled substance." This misdemeanor crime does not involve a danger of forcible injury to persons or of appropriation of or damage to property, and therefore, because Sterka only suspected Brazwell of the misdemeanor crime of loitering at the time he approached the suspect, Sterka's stop and detention of Brazwell was impermissible under Rule 3.1.

██ ██ The State argues that Sterka could have arrested Brazwell for loitering and searched him incident to that arrest. We disagree. An officer may arrest a person without a warrant in certain situations, such as when the officer has "reasonable cause to believe that such person has committed any violation of law in the officer's presence." *See* Ark. R. Crim. P. 4.1(a)(iii) (2003). Probable cause to arrest without a warrant exists when facts and circumstances within the officer's knowledge are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed by the person to be arrested. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002). The existence of probable cause depends upon the facts and circumstances of which the arresting officer has knowledge at the moment of the arrest. *Sanders v. State*, 259 Ark. 329, 532 S.W.2d 752 (1976) (citing *Beck v. Ohio*, 379 U.S. 89 (1964)). Stated another way, with respect to the issue of whether probable cause to arrest exists, after-acquired knowledge is irrelevant to the probable cause analysis, and only what the police officer knew *at the time of arrest* enters the analysis. *Laime, supra; Friend v. State*, 315 Ark. 143, 865 S.W.2d 275 (1993); *Roderick v. State*, 288 Ark. 360, 705 S.W.2d 433 (1986)).

██ Thus, for Sterka to have been able to arrest Brazwell, as the State claims would have been proper, Sterka would have had to reasonably suspect that Brazwell was loitering, at the time he stopped and detained Brazwell by asking Brazwell to approach his police vehicle. *See Jefferson v. State*, 349 Ark. 236, 76 S.W.3d 850 (2002). However, at the time Sterka detained Brazwell, Sterka had not observed Brazwell long enough to determine if he had been "lingering" or "remaining" outside the liquor store, as is required by § 5-71-213. Sterka's testimony was that he pulled into the parking lot and simply "observed" Brazwell sitting on the window ledge. Because Sterka could not have reasonably suspected

Brazwell of loitering at the time the detention occurred, the State's argument that Sterka could have arrested Brazwell is without merit.

▆▆ The State also proposes that Sterka "noted that [Brazwell] did not appear old enough to drink and that the nearby store owners complained of drug trafficking by persons who, like Brazwell, were loitering outside the stores." The State's second argument is also without merit. The facts of this case are decidedly different from those relied upon by the State. For instance, the State cites *Jefferson v. State*, 349 Ark. 236, 76 S.W.3d 850 (2002), in which this court agreed with the trial court that officers had reasonable suspicion under Rule 3.1 to stop and detain Jefferson. The facts there showed that police were patrolling a "high-crime" trailer park in the early morning hours. Jefferson emerged on foot from between two trailers, and when he saw the officers, he appeared startled and immediately changed direction. When the officers called to Jefferson to stop, Jefferson continued walking until one of the officers commanded him a second time to come to the patrol car. When Jefferson turned to walk toward the police car, he slipped his right hand into his pocket; as he got closer to the car, he threw something to the ground. This court held that these facts rose to a level sufficient to support the officers' suspicion that a crime had been or was about to be committed. *Jefferson*, 349 Ark. at 240-41, 246-47.

Similarly, in *Davis v. State*, 351 Ark. 406, 4 S.W.3d 892 (2003), this court affirmed the denial of appellant Davis's motion to suppress where the facts showed the officers had reasonable suspicion to stop and detain him. There, Davis and another man were in a high-crime area known for drug activity. They stood in a lot beside a vacant house when the officers saw a hand-to-hand exchange. As the officers approached, the men separated and walked quickly away. Davis gave one of the officers a false name and birth date, and he appeared nervous, fidgety and sweaty. Given the totality of the circumstances, this court held, the trial court did not err in denying Davis's suppression motion. *Davis*, 351 Ark. at 417.

The present case is similar to the case of *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998). In *Stewart*, the investigating officer saw a woman, Kathy Stewart, standing on a street corner about 1:45 in the morning. The officer asked Stewart to approach

his patrol car because of the time and because the corner was in a known drug area. As Stewart approached, she kept putting her hand in her coat pocket, despite the officer's request that she keep both hands out of her pockets. When Stewart reached the car, the officer asked her to place both hands on the vehicle, and he conducted a pat-down search for weapons.. The officer discovered some cash and a matchbox, which contained two rocks of crack cocaine. *Stewart*, 332 Ark. at 141. In reversing the trial court's denial of Stewart's suppression motion, this court concluded that there was "nothing about Stewart's actions or demeanor that indicated that she was involved in any illegal activity. Thus, the officer['s] only justification for stopping Stewart was simply that she was standing in the wrong place at the wrong time." *Id.* at 146.[1] *See also Anderson v. State*, 79 Ark. App. 286, 86 S.W.3d 403 (2002) (standing near a "no loitering" sign, without more, did not justify the officer's stop under Rule 3.1); *Jennings v. State*, 69 Ark. App. 50, 10 S.W.3d 105 (2000) (standing beside a sign prohibiting loitering in a known drug area did not give rise to a reasonable suspicion that suspect was committing, had committed, or was about to commit a felony or a violent misdemeanor, even where the officer testified she had reason to believe that appellant Jennings was loitering at the time she stopped him).

■ As discussed above, Sterka saw Brazwell sitting under a "No Loitering" sign in front of a liquor store at about 10:00 p.m., in a neighborhood from which the police had received numerous complaints about loitering and narcotics activity, and Brazwell did not appear to be of legal drinking age. However, Sterka did not testify that he had received any complaints of illegal activity on that particular night, and he offered no evidence that Brazwell appeared to be doing anything illegal. He did not even say how long he had seen Brazwell sitting there, so it is questionable if the facts even gave rise to a reasonable suspicion that Brazwell was loitering, which requires that a person "linger or remain" in a place. According to Sterka's testimony, Brazwell's demeanor was coop-

---

[1] The *Stewart* court also went on to examine whether the stop was proper under Ark. R. Crim. P. 2.2, which permits an officer to request any person to furnish information or otherwise cooperate in the investigation or prevention of a crime. The court held that it was not, because the officer was not investigating a particular crime. Rule 2.2 is not raised as an issue in this case, but even if it were, Sterka's stop of Brazwell would still not be proper because there was no testimony that he was investigating any particular crime.

erative; he made no attempts to conceal anything or avoid identification. Sterka did not testify that he knew who Brazwell was, and there was no evidence that Brazwell was consorting with anyone else suspicious. In sum, nothing about Brazwell, except for the fact that he looked young and was sitting under a "No Loitering" sign, gave Sterka any grounds to suspect that Brazwell was committing, had committed, or was about to commit a felony or a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property. Therefore, Sterka had no basis for stopping and detaining Brazwell, and the trial court erred in denying Brazwell's motion to suppress.

In Brazwell's second point on appeal, he suggests that double jeopardy attached when the State was allowed to convict and sentence him for both simultaneous possession of drugs and a firearm and the lesser-included offense of possession of drugs with intent to deliver; Brazwell also claims this court should reconsider the holding of *Rowbottom v. State*, 341 Ark. 33, 13 S.W.3d 904 (2000) which bears on the double jeopardy issue. However, because we reverse Brazwell's conviction on his first point on appeal, we do not reach or discuss his second point.

Reversed.

THORNTON, J., not participating.