2009 Ark. App. 700

**Colten COCKRELL, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–222.**

Court of Appeals of Arkansas.

Oct. 28, 2009.

Hancock, Lane & Barrett, PLLC, by Charles D. Hancock, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen. by Kathryn Henry, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Colten Cockrell was convicted by the Pulaski County Circuit Court of possession of a controlled substance (two counts), possession of drug paraphernalia, and carrying a weapon. He was sentenced to five years' probation. On appeal he argues that the trial court erred in (1) denying his motions for directed verdict because there was insufficient evidence to support the conviction for carrying a weapon, and (2) denying his motion to suppress evidence obtained in violation of Arkansas Rules of Criminal Procedure 2.2 and 3.1. Because we find merit in Cockrell's motion-to-suppress argument, we reverse and remand for further proceedings.

At approximately 6:12 p.m. on January 25, 2008, Officer Ryan Baker of the Sherwood Police Department was patrolling a two- to three-mile area where twelve armed robberies had occurred within the last two weeks. Officer Baker, who was normally assigned to the training division, had been assigned to robbery detail because of the high number of recent robberies. While on patrol, the officer observed a lone white truck properly backed into a parking space in the side lot of Kohl's department store, near the loading dock. The officer, unable to see the driver (later identified as Cockrell) due to darkness, pulled his patrol car directly in front of the truck, turned on his bright headlights, his spot light, and his take-down lights, and then called for assistance. The officer then approached the passenger-side window with his flashlight in one hand and his gun in the other. As he approached the truck, Officer Baker observed Cockrell reaching down. While unable to see Cockrell's hands, the officer was able to see what he thought was a small club [1] lying in the front-seat floorboard and a baseball bat behind the seat of Cockrell's truck.

When Officer Chris Madison arrived, Officer Baker walked to the driver's side of the truck and asked Cockrell to step out of the vehicle. Officer Baker asked Cockrell

---

1. The object was later identified as a landscaping tool.

if he played baseball or if he had any other baseball equipment in the vehicle, and Cockrell answered no. Officer Baker also asked Cockrell why he had a baseball bat, and Cockrell answered that he "traveled through Rose City, and you never know when you might need one." Still standing outside Cockrell's vehicle, the officer observed in plain view a straw with a band-aid wrapped around it lying on the floorboard and a razorblade. The straw and the razorblade had cocaine residue on them. Officer Baker placed Cockrell under arrest. During a search of the truck incident to the arrest, the officer found a small plastic bag containing cocaine. A subsequent search of Cockrell revealed fifteen hydrocodone pills in his pocket.

Prior to trial, Cockrell moved to suppress all the evidence obtained as a result of Officer Baker's stop and subsequent searches of Cockrell and his vehicle. At the suppression hearing, Cockrell argued that the stop was unlawful pursuant to Rules 2.2 and 3.1 of the Arkansas Rules of Criminal Procedure and a violation of his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution. The trial court denied the motion to suppress, and a bench trial immediately followed. Cockrell was found guilty of all charges.

Cockrell raises two points on appeal. The first is that the trial court erred in denying his motions for directed verdict because there was insufficient evidence to support the conviction for carrying a weapon. Cockrell's second argument on appeal is that the trial court erred in denying his motion to suppress evidence obtained in

violation of Arkansas Rules of Criminal Procedure 2.2 and 3.1 and his constitutional rights to be free from unreasonable searches and seizures.

## I. *Sufficiency of the Evidence*

For double-jeopardy reasons, we first consider Cockrell's claim that there was insufficient evidence to support his conviction for carrying a weapon. *Stone v. State*, 348 Ark. 661, 666, 74 S.W.3d 591, 594 (2002). We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Stone*, 348 Ark. at 666, 74 S.W.3d at 594. It has been repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 74 S.W.3d at 594. We affirm a conviction if substantial evidence exists to support it. *Id.*, 74 S.W.3d at 594. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without having to resort to speculation or conjecture. *Id.* at 667, 74 S.W.3d at 594. Further, we will not second-guess credibility determinations made by the fact-finder. *Id.*, 74 S.W.3d at 594.

At trial when moving for directed verdict on the carrying-a-weapon charge, Cockrell's counsel argued "there's been no evidence that Mr. Cockrell intended to use [the bat and landscape tool] as a weapon or that he in fact used them as a weapon." However, on appeal Cockrell has changed his argument, focusing on the language of Arkansas Code Annotated section 5–73–120(a), (b)(1) (Repl.2005),[2] arguing:

---

**2.** Section 5–73–120(a) provides that a person commits the offense of carrying a weapon if he possesses a handgun, knife, or club on or about his or her person, in a vehicle occupied by him, or otherwise readily available for use with a purpose to employ the handgun, knife, or club as a weapon against a person. Ark. Code Ann. § 5–73–120(a). In this section, "club" is defined as "any instrument that is specially designed, made, or adapted for the

[T]here was no evidence in the record that the [bat and landscaping tool] had been adapted for the purpose of inflicting serious physical injury or death by striking. Officer Baker testified that he did not observe any changes or alterations to the alleged weapons found in Mr. Cockrell's truck.

Because Cockrell's argument on appeal is made for the first time,[3] we will not address it. *Stone,* |₅348 Ark. at 668, 74 S.W.3d at 595. Accordingly, we affirm the trial court on the sufficiency point.

### II. *Motion to Suppress*

 Cockrell's central contention on appeal is that Officer Baker's stop was illegal, and thus, any items seized from him and his vehicle should be suppressed. We review suppression challenges de novo based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State,* 351 Ark. 406, 411, 94 S.W.3d 892, 894 (2003). We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Boldin v. State,* 373 Ark. 295, 302, 283 S.W.3d 565, 570 (2008). Additionally, we defer to the circuit court's superior position to judge the credibility of witnesses. *Id.,* 283 S.W.3d at 570.

### A. Rule 2.2

 Cockrell contends that Officer Baker's stop was unlawful pursuant to Rule 2.2 of the Arkansas Rules of Criminal Procedure. Rule 2.2 allows officers to request any person to furnish information or otherwise cooperate in the investigation or prevention of crime and provides:

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

Ark. R.Crim. P. 2.2(a). This occurs when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. *Thompson v. State,* 303 Ark. 407, 409, 797 |₆S.W.2d 450, 451 (1990). Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the Fourth Amendment.[4] *Id.,* 797 S.W.2d at 451. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. *Id.,* 797 S.W.2d at 451–52. A seizure occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id.,* 797 S.W.2d at 451.

 We agree with Cockrell that Officer Baker's stop was not lawful under Rule 2.2 because it was not a consensual encounter. According to the testimony of

---

purpose of inflicting serious physical injury or death by striking...." Ark.Code Ann. § 5–73–120(b)(1).

**3.** While Cockrell asserts that he did argue below that the bat and landscaping tool did not meet the definition of a club under Arkansas Code Annotated section 5–73–120, that argument was made at the conclusion of the suppression hearing, which was prior to the close of the State's case-in-chief—a violation of Arkansas Rule of Criminal Procedure 33.1(b).

**4.** The Fourth Amendment guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. 4.

the officer, he pulled his patrol car in front of Cockrell's truck in such a position that Cockrell was blocked in and could not drive away. Also, the officer testified that he had his bright headlights, his spot light, and his take-down lights shining on Cockrell and had a gun in hand when he approached Cockrell. We believe that reasonable persons under these same circumstances would not have felt free to leave the encounter based on the officer's show of force and authority, and we further hold that this evidence establishes that this stop was a seizure within the meaning of the Fourth Amendment. *See State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997) (affirming trial court's grant of motion to suppress, holding that officer's pursuit, with blue lights flashing, and stop of defendant's vehicle and request for defendant to accompany the officer to another's home "went far beyond the sort of encounter authorized by Rule 2.2 and became a seizure such that a reasonable person in that situation would not have believed he was free to leave"; "this was not a situation where ⌊₇the officer merely approached two men on a public street and asked if they would provide information"); *Cf. Thompson*, 303 Ark. at 410, 797 S.W.2d at 452 (affirming trial court's denial of suppression motion under Rule 2.2 because no seizure took place where the officer—who approached defendant's vehicle at 1:40 a.m.—did not restrain the liberty of the driver or show authority by exhibiting a weapon or ordering the driver out of the vehicle).

### B. Rule 3.1

The next question is whether Officer Baker's seizure of Cockrell was authorized pursuant to Rule 3.1 of the Arkansas Rules of Criminal Procedure. Rule 3.1 governs investigatory stops and provides that an officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. *Thompson*, 303 Ark. at 409, 797 S.W.2d at 451. Rule 3.1 states in pertinent part:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

Ark. R.Crim. P. 3.1. Reasonable suspicion is defined by our rules as

> a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Ark. R.Crim. P. 2.1. Arkansas Code Annotated section 16–81–203 (Repl.2005) also provides that an officer must have reasonable grounds to detain a suspect under Rule 3.1. This statute includes, but is not limited to, the following grounds:

⌊₈(1) The demeanor of the suspect;

(2) The gait and manner of the suspect;

(3) Any knowledge the officer may have of the suspect's background or character;

(4) Whether the suspect is carrying anything, and what he or she is carrying;

(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;

(6) The time of the day or night the suspect is observed;

(7) Any overheard conversation of the suspect;

(8) The particular streets and areas involved;

(9) Any information received from third persons, whether they are known or unknown;

(10) Whether the suspect is consorting with others whose conduct is reasonably suspected;

(11) The suspect's proximity to known criminal conduct;

(12) Incidence of crime in the immediate neighborhood;

(13) The suspect's apparent effort to conceal an article; and

(14) The apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.

Ark.Code Ann. § 16–81–203. The justification for the investigatory stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person may be involved in criminal activity. *Davis*, 351 Ark. at 415, 94 S.W.3d at 897 (citing *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982)). Under that test, the facts articulated by the officer are not viewed in isolation, but are taken together. *Davis*, 351 Ark. at 415, 94 S.W.3d at 897.

Cockrell contends that Officer Baker's investigatory stop was unlawful under Rule 3.1. Based on the totality of the circumstances, we agree and hold that Officer Baker did not have justification for an investigatory stop under Rule 3.1 because he did not have specific, particularized, and articulable reasons indicating that Cockrell may have been involved in the recent armed robberies.

According to Officer Baker, based on his training, he had reason to suspect Cockrell was involved in the recent armed robberies because Cockrell was within the area where twelve robberies had occurred in the past two weeks, it was dark outside, and Cockrell's truck was backed into a parking spot away from other vehicles in a side lot. The officer added that because the robbers were getting away so quickly that it was suspected that a get-away car was nearby or the robbers lived in the area. This is the only evidence identified by Officer Baker that he claimed supported his decision to stop and seize Cockrell.

We hold that this evidence fails to establish reasonable articulable suspicion that Cockrell was involved in the armed robberies. All this evidence demonstrates is that Cockrell was legally and properly parked in a business parking lot during regular business hours. Because he was backed into the parking space or because he was alone in the side parking lot are not bases for reasonable suspicion that he was involved in the armed robberies. This is nothing more than an innocuous set of circumstances that could encompass the everyday common activities of law-abiding citizens. Granted, Cockrell was within the two- to three-mile "armed-robbery zone"; however, merely being present in a high-crime area does not rise to reasonable suspicion sufficient to authorize an investigatory stop. *See Stewart v. State*, 332 Ark. 138, 147, 964 S.W.2d 793, 798 (1998); *Jennings v. State*, 69 Ark. App. 50, 54, 10 S.W.3d 105, 108 (2000).

Moreover, Officer Baker testified that he did not witness Cockrell commit any felony or misdemeanor offenses. The officer also admitted during his testimony that he had not received any information from any third party that Cockrell and/or his vehicle had been involved in any of the

recent armed robberies. Finally, there was evidence that a black truck, and white passenger vehicle, and a black man were involved in the armed robberies, none of which matched Cockrell's or his vehicle's description.

The State argues that of the fourteen statutory grounds that support the detention of a suspect under Rule 3.1, it presented evidence of six. Ark.Code Ann. § 16–81–203(4), (6), (8), (11), (12), (13). At most the State presented evidence that five grounds existed on the day in question. Ark.Code Ann. § 16–81–203(4), (8), (11), (12), (13). We do not consider factor six to be significant—it may have been dark outside, but it was only 6:12 p.m. We further note that three of the grounds argued by the State involve Cockrell having been within a two- to three-mile area that had recently experienced multiple armed robberies. Ark.Code Ann. § 16–81–203(8), (11), (12). The only other factors that existed were that Cockrell had a bat and landscaping tool in his vehicle and that he tried to conceal something when the officer approached. Ark.Code Ann. § 16–81–203(4), (13).

Therefore, the State only established that Cockrell was parked in the recent armed-robbery zone, that he had a bat and a landscaping tool in his vehicle, and that he tried to conceal something upon Officer Baker's approach. Again, just being present in a high-crime area does not rise to reasonable suspicion sufficient to authorize an investigatory stop. *Stewart*, 332 Ark. at 147, 964 S.W.2d at 798; *Jennings*, 69 Ark. App. at 54, 10 S.W.3d at 108. We attach little significance to the presence of the bat and the landscaping tool in Cockrell's vehicle because these items were not considered by Officer Baker when he decided to stop Cockrell. This is because the officer did not see these items until after he had seized Cockrell by blocking his

vehicle and approaching him with lights and a weapon. Moreover, there is no evidence in the record that bats or landscaping tools had been used in any of the recent armed robberies. As such, these factors considered alone or together do not give rise to reasonable suspicion that Cockrell was involved in the armed robberies or any other crime.

The State relies on *Jefferson v. State*, 349 Ark. 236, 76 S.W.3d 850 (2002). There, our supreme court held that the officer had reasonable, articulable suspicion to stop the defendant where the evidence demonstrated that he, at 2:00 a.m., was found walking between two trailers that were parked in an area where drugs and prostitution were prevalent. When the defendant saw the officers, he appeared startled, changed the direction in which he was walking, and quickened his pace. When the defendant finally responded to officers calling to him, he slipped his right hand into his pocket, pulled something out, and dropped it on the ground. *Jefferson*, 349 Ark. at 240, 76 S.W.3d at 852.

The case at bar is distinguishable. Cockrell was legally and properly parked in a department-store parking lot during business hours. It was 6:12 p.m.—not 2:00 a.m. Cockrell was parked within the two- to three-mile zone that had been victim to recent armed robberies, but there was no evidence that any of the recent criminal activity had taken place at Kohl's or any other large department store. Finally, Cockrell did not try to evade or avoid Officer Baker upon his approach.

In sum, when making an independent determination based on the totality of the circumstances, we hold that Officer Baker's stop violated both Rules 2.2 and 3.1 of the Arkansas Rules of Criminal Procedure. There was clearly a "seizure" under the Fourth Amendment and based on the facts

in this case, the officer did not have reasonable suspicion that Cockrell had committed or was about to commit robbery at the time of the "seizure." Accordingly, the items seized as a result of the illegal stop and subsequent search of Cockrell and his vehicle must be suppressed.

Reversed and remanded.

HART, GLADWIN, and GLOVER, JJ., agree.

GRUBER and HENRY, JJ., dissent.

RITA W. GRUBER, Judge, dissenting.

I agree with the majority that Mr. Cockrell's sufficiency claim was not preserved for appeal. I disagree, however, that Officer Baker's seizure of Mr. Cockrell was conducted in violation of Rules 2.2 and 3.1 of the Arkansas Rules of Criminal Procedure and therefore dissent from the court's decision reversing on that point. While I agree with the majority that pulling his patrol car in front of Mr. Cockrell's truck blocking him in; turning on his bright headlights, spot light, and takedown lights; and approaching Mr. Cockrell's truck with a gun in his hand constituted a seizure by Officer Baker, I believe the seizure was supported by reasonable suspicion and therefore I would affirm.

On appeal from reasonable-suspicion determinations, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 413, 94 S.W.3d 892, 896 (2003). The process of looking at the totality of the circumstances, rather than at each isolated act, allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). While each act or factor taken in isolation might not provide a sufficient basis for reasonable suspicion, under a totality-of-the-circumstances analysis, we look at all of the facts and circumstances together. *See id.* Further, although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Id.* at 275, 122 S.Ct. 744.

In my view, this case is similar to *Jefferson v. State*, 349 Ark. 236, 76 S.W.3d 850 (2002) (reversing court of appeals' decision holding no reasonable suspicion to support detention). In *Jefferson*, the supreme court affirmed the trial court's denial of Jefferson's motion to suppress, holding the police officers had reasonable suspicion to detain him. At 2:00 a.m. the officers were patrolling a trailer park in an area known for drug trafficking and prostitution. The officers testified that they had been receiving complaints about the area, apparently from residents. Jefferson emerged from between two trailers, saw the officers, appeared startled, changed directions, and quickened his pace. He then ignored the officers' first request to come to the police car but did come over on the second request. When Jefferson put his hand in his pocket while walking toward the officers, one of the officers drew his weapon. Holding that there was reasonable suspicion to justify the detention, the court reasoned as follows:

Finding appellant apparently coming out from between two residential trailers at 2:00 a.m. certainly should give rise to suspicion that something illegal was afoot. This is especially so when the

area is considered, the history of the area is considered, and complaints of persons who likely had good reason to fear for the safety of their neighborhood is considered. Also, as Jefferson was walking toward the police officers he put his hand in his right front pocket, which gave the police officers good reason to be concerned about their safety. There was reasonable suspicion that a crime had been or was about to be committed.

*Jefferson,* 349 Ark. at 247, 76 S.W.3d at 857.

Similarly, in this case, Officer Baker testified that there had been twelve armed robberies of businesses during business hours in the surrounding two- to three-mile area (six in the immediate area) within the previous two-week period. He testified that Kohl's was open for business when he spotted Mr. Cockrell's truck in the back side of the parking lot, it was dark outside, the truck was backed into a parking space near the loading dock away from other vehicles, and it was very unusual for someone to be parked at that location. Due to a hill, the license plate was not visible. The officer did not see anyone in the truck until he turned on his spot-light, take-down lights, and bright headlights. Officer Baker also testified that, based on his training and experience as a law-enforcement officer, the way in which Mr. Cockrell was parked indicated that some type of criminal activity may be taking place. He was specifically concerned about a robbery.

Officer Madison testified that the robberies in the area were occurring and the people committing the offenses were disappearing. His opinion about the robberies was that, "either it had to be a secondary vehicle that someone was in waiting, ready to go, or they lived nearby."

In my view, particularly in light of Officer Baker's knowledge about robberies in the area and his specialized training, reasonable suspicion existed to support Officer Baker's seizure and therefore I would affirm the convictions.

HENRY, J., joins.