Kathy STEWART *v.* STATE of Arkansas

CR 97-1276                                             964 S.W.2d 793

Supreme Court of Arkansas
Opinion delivered March 5, 1998
[Petition for rehearing denied April 16, 1998.]

*William R. Simpson, Jr.*, Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. At the conclusion of a bench trial, the appellant, Kathy Stewart, was convicted of possession of a controlled substance in violation of Ark. Code Ann. § 5-64-401 (Repl. 1997). On appeal, Stewart challenges the trial court's denial of her motion to suppress the evidence that was seized from her coat pocket. We reverse and remand.

On December 4, 1995, at approximately 1:45 a.m., Officer Spangler was patrolling an area of Little Rock that was known to him to have "high drug traffic." As Officer Spangler approached the intersection of 27th Street and Broadway, he noticed Kathy Stewart standing on the corner outside of her home. Based upon the time of day, where she was standing, and the fact that he had previously made several arrests in that area, Officer Spangler believed that Stewart might be engaged in drug trafficking.

Officer Spangler pulled up to where Stewart was standing and asked her what she was doing. Stewart answered that she was about to go for a walk. Officer Spangler asked Stewart to remove her hands from her coat pocket and to walk towards his patrol car. As Stewart approached Officer Spangler's vehicle, she placed her right hand inside of her right coat pocket two or three times despite Officer Spangler's repeated requests to keep both of her hands out of her jacket. Stewart's behavior caused Officer Spangler to believe that she might have a weapon in her coat pocket.

When Stewart reached the police car, Officer Spangler asked her to place both hands on the car, and he proceeded to perform a pat down search for weapons. After feeling a large bulge in Stewart's right coat pocket, Officer Spangler reached into Stewart's pocket and retrieved thirty-five one dollar bills, a one hundred dollar bill, and a matchbox. Officer Spangler then opened the matchbox and discovered two rocks of crack cocaine. Stewart was subsequently arrested and charged with possession of a controlled substance.

Prior to trial, Stewart filed a motion to suppress the drugs seized from her pocket because the warrantless stop was made without "a reasonable and articulable suspicion that [she] was armed and dangerous nor with probable cause to believe that [she] had committed a felony." At the beginning of the bench trial, Stewart reminded the court of her pending motion to suppress, and asked the court to "take the matter up" at the same time that it considered whether she was guilty of possession of a controlled substance. The trial judge granted Stewart's request.

The State proceeded to present its case-in-chief against Stewart. When the State offered the drugs into evidence, Stewart objected on the basis that the State had failed to establish a proper chain of custody, but she did not renew her constitutional challenges to the stop and subsequent search. After the State established a proper chain of custody, the drugs were admitted into evidence. The State presented no further evidence and rested its case. Stewart immediately followed with her argument that the drugs should have been suppressed due to the unconstitutional stop and search. The same argument was renewed by Stewart at the conclusion of the trial. The court denied Stewart's motion to suppress and found her guilty of possession of a controlled substance.

In *Stewart v. State*, 59 Ark. App. 77, 953 S.W.2d 599 (1997), the Arkansas Court of Appeals reversed Stewart's conviction and remanded for a new trial because it concluded that the police officer exceeded the permissible scope of a pat-down search under *Terry v. Ohio*, 392 U.S. 1 (1968), when he removed the matchbox from Stewart's pocket and examined the contents. We granted the State's petition to review, and decide the case as if the appeal was originally filed in this court. *McElhanon v. State*, 329 Ark. 261, 948 S.W.2d 89 (1997); *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997).

## I. Contemporaneous Objection

On appeal, the issue is whether the trial court erred when it denied Stewart's motion to suppress the drugs seized from her coat pocket. Before reaching the merits of Stewart's argument, we must first decide whether she has properly preserved this issue for

appeal. The State contends that she has not because she failed to make a contemporaneous objection when the drugs were offered into evidence. Hence, we are asked for the first time to decide whether a contemporaneous objection is required during a bench trial when the previously filed motion to suppress has been renewed at the beginning of the trial.

■ ■ It is well settled that in order to preserve an issue for appeal the appellant must make an objection contemporaneously with the alleged error. *Smith v. State*, 330 Ark. 50, 953 S.W.2d 870 (1997). In *State v. Brummett*, 318 Ark. 220, 885 S.W.2d 8 (1994), we explained that the reason for the contemporaneous-objection rule is to give the trial court an opportunity to fully understand the reason for the disagreement with its proposed action before it renders a ruling. If, however, the motion to suppress is orally renewed at the beginning of a bench trial, and the trial court agrees to consider the motion to suppress at the same time it considers the evidence, there is no risk that the court will be unfamiliar with the nature of the objection. Under these circumstances, we hold that a contemporaneous objection is not required in order to preserve the issue for appeal.

In reaching this conclusion, we are not unmindful of two recent cases where we held that a contemporaneous objection is required in order to preserve for appeal issues that were raised in a motion in limine. *Slocum v. State*, 325 Ark. 38, 924 S.W.2d 237 (1996); *Massengale v. State*, 319 Ark. 743, 894 S.W.2d 594 (1995). We, however, find these cases distinguishable because they involved jury trials, instead of a bench trial as in this case. If a contemporaneous objection is not made at the time the evidence is offered during a jury trial, the proverbial bell will have been rung and the jury prejudiced. However, when the contested evidence is mentioned during a bench trial, there is no risk of prejudice because a trial judge is able to consider evidence only for its proper purpose. Similarly, in *Strickland v. State*, 322 Ark. 312, 909 S.W.2d 318 (1995), we held that litigants are not required to make a motion challenging the sufficiency of the evidence during cases tried before the court instead of a jury.

■ For these reasons, we hold that during a bench trial it is not necessary to make a contemporaneous objection when the contested evidence is offered if the appellant has renewed the previously filed motion to suppress at the beginning of the trial, and the court agrees to consider the motion simultaneously with the evidence on the merits. Accordingly, we hold that Stewart has properly preserved her constitutional argument for appeal.

## II. Constitutionality of the Initial Encounter

■ As to the merits, Stewart contends that the trial court erred when it denied Stewart's motion to suppress the drugs seized from her coat pocket. When reviewing a trial court's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances and reverse only if the trial court's ruling is clearly against the preponderance of the evidence. In making this determination, we view the evidence in the light most favorable to the State. *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997); *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997), *cert. denied*, 117 S. Ct. 2411 (1997).

■ In order to resolve this issue, we must first decide whether the police action in the initial encounter between Officer Spangler and Stewart was permissible under the Constitution and our Rules of Criminal Procedure. In *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998), we recently explained that there are three types of encounters between the police and private citizens:

> The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the fourth amendment. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause.

(citing *Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990); *U.S. v. Hernandez*, 854 F.2d 295 (8th Cir. 1988)).

■ ■ The State first contends that the initial encounter between Officer Spangler and Stewart was a permissible "stop" or "seizure" under Ark. R. Crim. P. 3.1, which provides that:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or · verify the identification of the person or to determine the lawfulness of his conduct.

In this context, we have defined a "reasonable suspicion" as a suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. *Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997); *Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995); Ark. R. Crim. P. 2.1. In making this determination, the trial court may consider several factors which are listed in Ark. Code Ann. § 16-81-203 (1987). The factors most relevant to this case are:

1) the demeanor of the suspect;
2) the gait and manner of the suspect;
6) the time of the day or night the suspect is observed;
. . .
8) the particular streets and areas involved;
. . .
12) incidence of crime in the immediate neighborhood;
13) the suspect's apparent effort to conceal an article;

■ As mentioned previously, Officer Spangler testified that he asked Stewart to approach his patrol car because she was standing on a street corner in a known drug area at around 1:45 a.m. Officer Spangler also testified that Stewart returned her hand to her coat pocket two or three times, thus possibly indicating that she was concealing a weapon. However, Stewart did not do this until *after* Spangler asked her to approach the car, and thus it cannot be used as a justification for the stop. In addition, there was

nothing about Stewart's actions or demeanor that indicated that she was involved in any illegal activity. Thus, Officer Spangler's only justification for stopping Stewart was simply that she was standing in the wrong place at the wrong time. Under such limited circumstances, we have no hesitancy in saying that the trial court's finding that Officer Spangler had a reasonable suspicion to stop Stewart under Ark. R. Crim. P. 3.2, was clearly against the preponderance of the evidence.

This, however, does not end our inquiry because the State claims that, in the alternative, Officer Spangler's initial contact with Stewart was permissible under Ark. R. Crim. P. 2.2, which provides that:

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.
>
> (b) . . . Compliance with the request for information or other cooperation hereunder shall not be regarded as involuntary or coerced solely on the ground that such a request was made by a law enforcement officer.

On several occasions, we have clarified that an encounter under Ark. R. Crim. P. 2.2, is permissible only if the information or cooperation sought is in aid of an investigation or the prevention of a particular crime. *Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997); *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997); *Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990); *Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935 (1982); *Meadows v. State*, 296 Ark. 380, 602 S.W.2d 636 (1980).

For example, in *Hammons v. State, supra*, we held that it was permissible under Rule 2.2 for an officer to approach the driver of a parked car in the course of investigating a tip from a confidential informant that the driver of a black corvette was selling drugs behind the Old Town Tavern. Likewise, in *Baxter v. State, supra*, we held that an officer had not violated Rule 2.2 when he asked a driver about a theft from a nearby jewelry store that occurred only ten minutes earlier. In both of these cases, the initial encounter, which was not a seizure under the Fourth Amendment, was per-

missible under Ark. R. Crim. P. 2.2 because the officer was seeking assistance in the investigation of a particular crime.

In contrast, in *Meadows v. State, supra,* we held that an officer violated Rule 2.2 when he questioned two passengers who were exiting a plane simply because they repeatedly looked back at the officer and quickened their pace when they realized that he was following them. There was nothing in the officer's testimony that suggested that he asked Meadows for identification in the course of an investigation. *Id.* In *State v. McFadden, supra,* an officer received a report that a juvenile girl was missing from her home, and that she might be with McFadden, her boyfriend. Because no criminal activity was suspected at the time of the encounter, we held that the officer violated Rule 2.2 when he pulled over McFadden and questioned him about the juvenile's disappearance. *Id.*

In this case, Officer Spangler pulled over to the curb where Stewart was standing and asked her to approach his patrol car simply because she was standing on the corner in a high crime area late in the evening. Unlike *Hammons* and *Baxter,* Officer Spangler was not investigating a nearby crime or a tip from an informant at the time of the encounter. Under these circumstances, we cannot say that the encounter was permissible under Rule 2.2.

Because the initial encounter was impermissible under Ark. R. Crim. P. 2.2 and 3.1, we reverse the trial court's denial of the motion to suppress as it was clearly against the preponderance of the evidence. In light of this holding, there there is no need for us to consider Stewart's final argument that the extent of the search was unconstitutional under *Minnesota v. Dickerson,* 508 U.S. 366 (1993). Moreover, we note that this particular constitutional challenge is procedurally barred because Stewart did not raise it below. *See Moore v. State,* 323 Ark. 529, 915 S.W.2d 284 (1996); *Rhoades v. State,* 319 Ark. 45, 888 S.W.2d 654 (1994); *Chism v. State,* 312 Ark. 559, 853 S.W.2d 255 (1993).

For these reasons, we reverse and remand.