## Gregory LAMB *v.* STATE of Arkansas

CA CR 01-846 70 S.W.3d 397

Court of Appeals of Arkansas
Division III
Opinion delivered March 20, 2002

[Petition for rehearing denied May 1, 2002]

*Mark Rees*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. This is an appeal from the denial of a motion to suppress in the Craighead County Circuit Court, after which appellant entered a conditional plea of guilty for possession of methamphetamine and reserved his right to appeal the suppression denial. In denying the motion, the court held that the seizure of appellant was unreasonable under Ark. R. Crim. P. 3.1, but was proper under Ark. R. Crim. P. 2.2. Lamb was sentenced to thirty-six months of supervised probation. On

appeal, appellant argues that the trial court erred when it held that his stop was valid and that his constitutional rights were not violated. We reverse and remand.

On July 17, 2000, at 11:45 p.m., Officer Cooper Taylor responded to a call at 1508 Overhill in Jonesboro, Arkansas. Mr. Ronnie Shaver reported a broken windshield on his vehicle. While taking the criminal mischief report at the home, the officer and Shaver noticed a slow-approaching truck, traveling southbound on Overhill, stop in the general vicinity of the intersection with Westwood. A passenger, later identified as appellant, stepped out of the vehicle and walked down the street going eastbound on Westwood. The time was approximately 12:15 a.m. on July 18, 2000.

Officer Taylor became suspicious when he noticed that appellant did not go directly into a residence. He testified that "Mr. Shaver spoke to me about some problems with a residence south of his on Overhill. He was complaining about suspicious activity, a large number of vehicles in and out at all hours of the day and night." Shaver indicated to Officer Taylor that he thought appellant could possibly have been involved with the mischief; therefore, the officer got into his vehicle and headed towards appellant to make contact. Taylor made contact with appellant, whereupon he requested to see some identification. Appellant, thereafter, produced a driver's license. Officer Taylor ran a local check, discovering that appellant had a warrant for failure to appear. He then placed appellant under arrest and performed a search incident to that arrest. He found appellant in possession of a controlled substance, namely methamphetamine.

Taylor testified at the suppression hearing that one of Shaver's neighbors, Mr. Thetford, heard a window break and saw a vehicle leave the scene. According to Thetford, there appeared to be two male passengers in a sports utility vehicle. Further, the officer testified that "I made contact with this individual because of a combination of my own observations and what Mr. Shaver had related to me. Due to the late hours, the reason I was there, Mr. Shaver's indications to me, that the person did not go directly into a residence, and he was walking down a street, are reasons I made con-

tact with this individual." Again on cross-examination, the officer stated that "I went up and detained Mr. Lamb because he got out of a vehicle and walked down the street, the time of night, it was a residential neighborhood, a crime had occurred prior to my contact with Mr. Lamb, and the statement that a male was involved."

The trial court, in ruling on the motion to suppress, held that Lamb's encounter with the police was not a valid stop under Arkansas Rule of Criminal Procedure 3.1. The trial court stated:

> the interesting aspect of this stop is the fact that you are talking about midnight in a private neighborhood, a crime has been committed, without question, a crime has been committed. The defendant is within three hundred yards of the area where the crime has been committed. You have officers there who don't know what happened. They have reports of two individuals about the crime. They have a bare suspicion by one of the persons that this gentleman may be involved, although there is really no basis for that.

Nevertheless, the court found that the officer had authority under Arkansas Rule of Criminal Procedure 2.2 (2001), "to do an investigatory stop of this defendant."

█ In reviewing a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling is clearly against the preponderance of the evidence. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997); *McDaniel v. State*, 65 Ark. App. 41, 985 S.W.2d 320 (1999). Due deference is given to the trial court's findings in the resolution of evidentiary conflicts and determinations of credibility. *Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000).

█ Police-citizen encounters have been classified into three categories. The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997). Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the Fourth Amendment. *Id.* Rule 2.2 of the Arkansas

Rules of Criminal Procedure allows an officer to make the non-seizure police-citizen encounter. The second permissible police-citizen encounter involves one where an officer justifiably restrains an individual who he or she has an "articulable suspicion" has committed or is about to commit a crime. Ark. R. Crim. P. 3.1 (2001); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998). The final category is the full-scale arrest, which must be based on probable cause. *Frette v. City of Springdale, supra.*

 Although the trial court found the encounter impermissible under Rule 3.1, it nevertheless held appellant's encounter with Officer Cooper Taylor to be permissible under Rule 2.2. In part, Rule 2.2 provides:

> (a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

Ark. R. Crim. P. 2.2 (2001). The insertion of the word "otherwise" in the rule shows beyond question that the officer's request for information must be in aid of the investigation or prevention of crime. *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998); *Meadows v. State*, 269 Ark. 380, 602 S.W.2d 636 (1980). "Seizure" occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997). There is nothing in the Constitution that prevents the police from addressing questions to any individual; however, the approach of the citizen pursuant to a policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom, with due consideration being given to the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. *McDaniel v. State*, 20 Ark. App. 201, 726 S.W.2d 688 (1987).

Based on the attending circumstances giving rise to the police-citizen encounter at hand, we hold that Ark. R. Crim. P.

2.2 is simply inapplicable in this situation, and that appellant's stop constituted an impermissible stop and detainment under Ark. R.Crim. P. 3.1.

■ ■ Rule 3.1 of the Arkansas Rules of Criminal Procedure (2001) provides that a law enforcement officer may stop and detain any person he reasonably suspects is committing, has committed, or is about to commit a felony. For purposes of this rule, reasonable suspicion means a suspicion based upon facts or circumstances which give rise to more than a bare, imaginary, or purely conjectural suspicion. *Addison v. State*, 298 Ark. 1, 765 S.W.2d 566 (1989). An officer does *not* have *to* witness the violation of a statute in order to stop a suspect. *Piercefield v. State*, 316 Ark. 128, 871 S.W.2d 348 (1994). The justification for an investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating a person or vehicle may be involved in criminal activity. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982), *cert. denied*, 459 U.S. 882 (1982).

■ Among the factors to consider in determining whether an officer has grounds to "reasonably suspect" are the time of day or night the suspect is observed; the particular streets and area involved; any information received from third persons, whether they are known or unknown; the suspect's proximity to known criminal conduct; and incidence of crime in the immediate neighborhood. Ark. Code Ann. § 16-81-203 (1987); *see also Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999).

The facts presented in this case are akin to those found in *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998). In *Stewart*, an officer pulled over to a curb and asked the appellant to approach his patrol car simply because she stood on the corner in a high-crime area late in the evening. The officer in *Stewart* was not investigating a nearby crime or a tip from an informant at the time of the encounter, and on appeal, the supreme court held the encounter impermissible under Rule 2.2.

We recognize that the difference in this case is that officer was investigating a nearby crime. However, the problem lies with weighing the government's interest for the intrusion against

Lamb's right to privacy and personal freedom, with due consideration being given to the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. Here, similar to the circumstances in *Stewart*, Officer Taylor drove up next to Lamb and asked him for his name and identification. Nowhere in the record is it evidenced that when Officer Taylor approached Lamb, he told appellant that he was investigating a nearby crime and wanted to see if Lamb could provide any information.

██ Based upon the totality of the circumstances, the trial court properly ruled that the stop was not one that fell under Rule 3 because, taking into consideration the applicable fourteen factors, the factors present here to support a determination that Sergeant Cooper Taylor had "reasonable suspicion" to stop Lamb were the time of day, his proximity to the crime, and the fact that a crime had happened earlier. Although no exact number of factors are dispositive on the issue of "reasonable suspicion," the facts suggest that the officer had no particularized, specific, or articulable reason to stop the appellant, but did so only based upon the fact that the victim, Shaver, who was in the house when the incident occurred, stated to the officer that the appellant could have "possibly" been involved. Further, the statement by the neighbor only indicates that there were two men in a red and tan sports utility vehicle near the scene when he heard the windshield break. The officer testified that he saw a pickup truck, not a sports utility vehicle, containing appellant stop near the scene of the incident, and appellant emerged and began to walk on foot down the sidewalk and went toward no particular residence.

██ Because the police-citizen encounter here amounted to an unreasonable seizure under Ark. R. Crim. P. 3.1 when Officer Taylor detained Lamb, requested his driver's license, and ran a local check on him, we reverse the trial court's denial of the motion to suppress as it was clearly against the preponderance of the evidence and remand for trial.

Reversed and remanded.

HART and JENNINGS, JJ., agree.