2009 Ark. App. 429

**Orlando L. DOSIA, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1057.**

Court of Appeals of Arkansas.

May 27, 2009.

Debra J. Reece, Russellville, for appellant.

Dustin McDaniel, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge.

Appellant Orlando Dosia appeals his convictions for possession with intent to deliver cocaine, methamphetamine, and marijuana after a jury trial in Howard

County Circuit Court. On appeal, he challenges the denial of his motions to suppress,[1] contending that he was subjected to an unlawful encounter by a Nashville, Arkansas, police officer, resulting in a search that led to "fruits of the poisonous tree." Appellant contends that the trial court clearly erred in denying his motions to suppress, entitling him to a reversal and remand. We agree.

 |₂In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Stokes v. State*, 375 Ark. 394, 291 S.W.3d 155 (2009); *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008); *Sheridan v. State*, 368 Ark. 510, 247 S.W.3d 481 (2007). Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *Koster, supra.* Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses. *Id.*

The evidence presented at the suppression hearing included that of Officer Kyle Jones of the Nashville police department who testified that on the night of February 23, 2007, he was in uniform and patrolling in a marked unit. At approximately 9:45 p.m., Jones drove past a closed gas station, a Shell Superstop, where he observed two vehicles parked in the parking lot. Jones turned his patrol car around to "check them out."

Jones stated that there were no signs of criminal activity, no moving violations, nor any apparent mechanical difficulty or defective equipment on either vehicle. Jones

agreed that he was not aware of any reported criminal activity in that area that night, nor did he suspect it at the time. Jones explained that this was why he did not engage his police lights when he came back to the parking lot.

Although Jones thought it suspicious that one car "shot" out of the parking lot, Jones did not believe it suspicious enough to follow that car. Instead, Jones approached the |₃remaining car, which was then moving around the building, and observed the car stop. Jones pulled his patrol car up along the passenger side. Jones asked the occupants of the vehicle what they were doing. The men responded that they were discussing a dog house and offered to show the officer text messages to prove it. Jones told them he did not want to see the messages.

Jones asked their names. The passenger said his name was Maverick Canaday. Jones recognized the name as associated with drug-buy investigations, but a computerized check revealed no outstanding warrants and a valid driver's license.

By this time, Jones was out of the patrol car speaking to the men, who remained in their vehicle. Jones asked the driver (appellant) his name, to which appellant gave his name and date of birth, but said he did not have a valid driver's license. Appellant's license was determined to be suspended. Jones described Maverick as "shaking, very nervous," and appellant as "a little nervous."

As Jones waited for the computer check to come back, another officer (Officer Clinton Tedford) arrived to assist. Tedford told appellant to get out of his vehicle, and Jones asked appellant what was in the bag under appellant's feet in the floorboard.

---

1. There was a pretrial hearing on the motion to suppress, which was denied from the bench. Appellant filed a motion to reconsider on the eve of trial, which was denied by the trial court.

Appellant offered to let Jones retrieve it. Instead, Jones told appellant to retrieve it. At that point, appellant placed his hands on the top of the car. Tedford then grabbed the bag and smelled it; the bag smelled strongly of marijuana and felt as if it held a substantial amount ⌊₄of the drug. Appellant was arrested, and upon search incident to arrest, more drugs and $1907 in cash were found. This led to the charges and eventual convictions.

The trial judge, when asked to rule on the motion to suppress prior to trial, found that the officers were "doing what they should have been doing in checking things out" but that appellant was "in the wrong place at the wrong time." The judge thus denied the motion to suppress. There is no question that upon learning that appellant was driving on a suspended license, the officers were entitled to detain appellant. It is the encounter up to the moment that appellant was asked for his name, date of birth, and driver's license that is at issue.

The State's brief asserts that the Rules of Criminal Procedure are not applicable because the police officer's acts here were no more than basic functions of community care-taking. The State asserts further that to the extent that the Rules apply, none were violated. Appellant argues that the encounter is governed by our Rules of Criminal Procedure and that this was a clear violation of those Rules, designed to protect a citizen's Constitutional rights.

In *Stewart v. State,* 332 Ark. 138, 964 S.W.2d 793 (1998), our supreme court explained the three types of encounters between the police and private citizens:

> The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute

a "seizure" within the meaning of the fourth amendment. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit ⌊₅a crime. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause.

*Stewart,* 332 Ark. at 144, 964 S.W.2d 793; *see also Frette v. City of Springdale,* 331 Ark. 103, 959 S.W.2d 734 (1998).

At issue before us today is whether the encounter was impermissible under our Rules of Criminal Procedure and Constitution. *See Lamb v. State,* 77 Ark.App. 54, 70 S.W.3d 397 (2002). If so, then the motion to suppress was erroneously denied, requiring reversal and remand.

■ We first dispose of any reliance on Ark. R.Crim. P. 3.1, which permits an officer to stop and detain a person who is reasonably suspected of having committed, committing, or being about to commit a felony or misdemeanor involving danger of injury or property damage. Those requirements are simply not present here, by Officer Jones's candid admission. However, there is a less intrusive interaction permitted between police and citizens, outlined in Ark. R.Crim. P. 2.2 that provides in relevant part:

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

(b) . . . Compliance with the request for information or other cooperation hereunder shall not be regarded as involuntary or coerced solely on the ground that such a request was made by a law enforcement officer.

Our supreme court has clarified that an encounter under Ark. R.Crim. P. 2.2 is permissible only if the information or cooperation sought is in aid of an investigation or the prevention ₆of a particular crime. *Stewart, supra. See also Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997); *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997). It is Rule 2.2 that provides authority for a police officer to act in a non-seizure encounter, referring to the first category of police-citizen encounters. *See State v. McFadden, supra. See also Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990).

▆▆▆ There is nothing in the Constitution that prevents officers from addressing questions to any individual. *Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935 (1982). However, the approach of a citizen pursuant to a policeman's investigative law enforcement function must be reasonable under the existing circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom. *Id.* What must be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances of the encounter. *Id.* Rule 2.2 authorizes police action provided that the approach does not rise to the level of a "seizure" and provided that the information and cooperation sought is in aid of the investigation or prevention of crime. *State v. McFadden, supra.*

▆▆▆ Similar to the fact scenario in *Stewart, supra*, the police officer here was not investigating a nearby crime or a tip from an informant at the time of the encounter. Under these circumstances, we cannot say that the encounter was permissible under Rule 2.2. Moreover, while not necessary to our disposition, we believe that reasonable persons under ₇the same circumstances would not have felt free to leave the encounter, particularly when the requests for identification and computer verification checks were commenced.

The State focuses its brief on justifying this encounter under a general community care-taking approach by the officer. This "community care-taking" argument was never presented to the trial court. However, the cases cited by the State for that proposition support such care-taking approaches if a driver appears to be in distress or injured, *Blakemore v. State*, 25 Ark.App. 335, 758 S.W.2d 425 (1988), or if there is abandoned property in a dangerous or high-crime area, *Adams v. State*, 26 Ark.App. 15, 758 S.W.2d 709 (1988). Such an initial approach was approved in *Swan v. State*, 94 Ark.App. 115, 226 S.W.3d 6 (2006), where an officer on routine patrol approached a vehicle at approximately 4:00 a.m. in a parking lot on the back side of a motel specifically to check on the three occupants' well-being. The officer in *Swan* also testified that upon approach, he observed Swan moving in a manner suggesting he was concealing an object in the seat. The evidence to suggest that community care-taking was the reason for the initial encounter in *Blakemore, Adams*, and *Swan* is not present in the case we consider today. *Compare Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Winters v. Adams*, 254 F.3d 758 (8th Cir.2001) (explaining community care-taking function).

Because the initial encounter and resulting detention were impermissible, we reverse the trial court's denial of the motion

to suppress as it was clearly against the preponderance of the evidence.

∟8Reversed and remanded.

VAUGHT, C.J., and KINARD, J., agree.