2010 Ark. 258

Colton COCKRELL, Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 09-1254.

Supreme Court of Arkansas.

May 27, 2010.

---

Hancock, Lane & Barrett, PLLC, by: Charles D. Hancock, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., by: Kathryn Henry, Asst. Atty. Gen., for appellee

JIM GUNTER, Justice.

Appellant appeals his convictions for possession of a controlled substance, possession of drug paraphernalia, and carrying a weapon. On appeal, he asserts that the circuit court erred in (1) denying his motion to dismiss on the charge of carrying a weapon, and (2) denying his motion to suppress all evidence resulting from the search of his vehicle. Because we granted the State's petition for review of this case, this court has jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(e). We affirm.

In a felony information filed April 1, 2008, appellant was charged with two counts of possession of a controlled substance, one count of possession of drug paraphernalia, and one count of carrying a weapon. On August 7, 2008, appellant filed a motion to suppress, arguing that there was no probable cause for the stop of his vehicle, so all evidence, both physical and testimonial, that resulted from the subsequent search should be suppressed. A suppression hearing and bench trial were held on October 7, 2008.

Officer Ryan Baker of the Sherwood Police Department testified that on January 25, 2008, he was on duty and had been assigned to a robbery detail. Twelve armed robberies had occurred in the Sherwood area over the previous two weeks, and Baker was part of a detail that had been assigned to patrol businesses in the area as a deterrent. At approximately 6:12 p.m. on January 25, Baker was in the Kohl's parking lot, where he came into contact with appellant. Appellant's truck, a white 1994 F–250 pickup, was backed into a parking space in a deserted area of the parking lot west of the store's entrance, away from the front doors. The truck was facing east, toward the Kohl's

building, and behind the truck was a hill. Baker parked his patrol car directly in front of appellant's truck, facing northwest. Baker did not see anyone in the truck at first, but after pulling up and turning his spotlight on the truck, Baker observed appellant sitting in the driver's seat and reaching down out of Baker's line of vision. Baker approached the passenger side door with his gun drawn at his side and ordered appellant to show his hands several times. After he approached, he saw in plain view a small club laying in the front seat floorboard, and as he waited for backup, he also observed a baseball bat behind the seat. According to Baker, once backup arrived, he walked around to the driver's side and had appellant step out of the truck. Baker asked appellant why he had a baseball bat, and appellant stated that he traveled through Rose City and "you never know when you may need one." After appellant stepped out of the truck, Baker observed a straw with a band-aid wrapped around it laying on the floorboard, and when checking the VIN number, also observed a razor blade on the floorboard with a white, powdery substance on it. At that point, Baker placed appellant under arrest and began searching the car. He located a small plastic bag containing a white, powdery substance on the floorboard. Baker identified the items he removed from the car, including a small-handled wooden club, which was a landscaping tool, and a small aluminum youth baseball bat. Baker also testified that after appellant was taken to the police department and searched, several pills later identified as hydrocodone were found in his pocket.

On cross-examination, Baker explained that the police had several leads about the person and vehicle involved in the robberies, but he did not recall if any of the leads involved a white Ford pickup. He stated

that he investigated this particular truck because he had reason to believe it was involved in these robberies. The Kohl's store was open, but the truck was parked around by the loading docks, away from the other vehicles, and part of what he looked for on patrol was someone possibly casing a business. Baker could not see into the car at first, but when he turned on his spotlight, appellant looked up and saw Baker, and then began to reach down. Baker stated that, based on his training and experience as a law-enforcement officer, and the way appellant was parked indicating some type of criminal activity taking place, he suspected appellant of robbery.

Officer Chris Madison testified that he was also on duty the night of January 25, 2008, and that he responded to Baker's call for backup. Madison recalled that when he arrived at the scene, he parked his vehicle facing the driver's side door of appellant's truck. He did not specifically recall whether Baker's vehicle was facing north or south, and he did not believe that Baker's vehicle had "tee-boned" appellant's truck and blocked it in. He testified that when he arrived, Baker had appellant out of the truck, and they were both standing near the driver's side door, which was open. Madison stood by appellant and talked to him while Baker looked in the truck. Soon after, Baker placed appellant in handcuffs, and Madison transported appellant to the Sherwood Police Department in his vehicle. Madison testified that while emptying appellant's pockets he found the hydrocodone pills in a plastic baggie, and he advised Baker that he had found them. Madison hypothesized that, because the suspect or suspects in the robberies were disappearing quickly

afterward, he thought there had to be a secondary vehicle waiting as a get-away car or that the suspect(s) lived nearby.

After the police officers' testimony, the court heard arguments from counsel regarding the motion to suppress. The State asserted that under Ark. R.Crim. P. 3.1, an officer can stop and detain any person who he or she reasonably suspects is committing or is about to commit a felony, and in this case, Officer Baker had a reasonable suspicion that justified approaching appellant and detaining him. The defense, on the other hand, asserted that the approach and detention were unjustified under Rule 3.1 and Rule 2.2, which gives officers the authority to request cooperation in the investigation or prevention of crime.

Regarding Rule 3.1, the defense argued that appellant's demeanor at the time was not indicative that he was committing any type of felony; instead, he was sitting in the parking lot of a department store during normal business hours in a marked parking spot, and there is no requirement that one pull into a parking spot instead of back into a parking spot. So, just seeing appellant sitting in his truck did not, it was argued, give Officer Baker the right to believe that a felony was being committed or about to be committed.

Regarding Rule 2.2, the defense argued that the justification for any investigatory stop depends upon the totality of the circumstances and whether the police have specific, particularized, articulable reasons indicating that the person is involved with criminal activity.[1] The defense also argued that a Rule 2.2 encounter is only permissible if the information or cooperation sought is in aid of an investigation or

---

1. While appellant cites this standard in his argument regarding Rule 2.2, this is the standard imposed when evaluating whether a stop was justified under Rule 3.1. *See Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003).

the prevention of a particular crime. In this case, the defense argued, the police were investigating a series of crimes in general, and the officer had no reason to identify appellant or appellant's vehicle as being involved in the robberies. In sum, the defense urged that the officer had no reasonable suspicion to justify approaching appellant's vehicle.[2]

The defense also addressed the charge of carrying a weapon and argued that, under Ark.Code Ann. § 5–73–120 (Repl. 2005), a person commits the offense of carrying a weapon if he possesses a handgun, knife, or club on his person, in his vehicle, or otherwise readily available for use. Under the statute, a club is defined as "any instrument that is specially designed, made, or adapted for the purpose of inflicting serious physical injury or death by striking." Ark.Code Ann. § 5–73–120(b)(1). The defense argued that neither the landscaping tool nor the aluminum bat met that definition. Therefore, the defense argued, "we feel that the motion for suppression of the weapons should be granted as well as ... the motion requesting that Officer Baker's approach on the vehicle is unjustified." The defense also mentioned Ark.Code Ann. § 16–81–203 (Repl.2005), which lists factors to be considered in determining if an officer has grounds to reasonably suspect, and argues that under a totality-of-circumstances test, these factors were not sufficiently met. The court announced that it was denying the motion to suppress, asserting its belief that this was a "textbook stop." The court stated that there was "a reasonable suspi-

cion to make that stop, and a reasonable suspicion turned into probable cause as a result of seeing the club."

The State then continued presenting its case by offering the testimony of Lize Wilcox, a forensic chemist with the Arkansas Crime Lab. Wilcox testified that cocaine residue was found on the razor blade; methamphetamine cocaine and dimethyl sulfone were found on the straw, cocaine hydrochloride was found in the plastic baggie from the floorboard; and the pills found in appellant's pocket were fifteen tablets of hydrocodone and acetaminophen.

The State then rested its case, and the defense moved for a dismissal of count four, the charge of carrying a weapon.[3] The defense argued that there was no evidence that appellant had intended to use either the baseball bat or the landscaping tool as a weapon or that he did use either item as a weapon. The court denied the motion, and the defense rested and renewed the motion, which was denied. The court found appellant guilty on all four counts, and at a later sentencing hearing, sentenced appellant to five years' probation. Appellant was also ordered to pay a $300 fine, a drug-task-force fee, to work or go to school, to submit to drug screens, and to submit a DNA sample. The judgment and commitment order was entered on November 19, 2008, and appellant filed a timely notice of appeal on December 15, 2008.

We first address appellant's argument that the circuit court erred in de-

---

**2.** Again, "reasonable suspicion" is a term used in evaluating a stop pursuant to Rule 3.1.

**3.** While appellant referred to his motion below as one for directed verdict, in a bench trial, a challenge to the sufficiency of the evidence is made in a motion for dismissal.

*See Law v. State,* 375 Ark. 505, 292 S.W.3d 277 (2009) (explaining that a motion to dismiss in a bench trial is identical to a motion for a directed verdict in a jury trial in that it is a challenge to the sufficiency of the evidence). Therefore, we will refer to appellant's motion as a motion to dismiss.

nying his motion to dismiss on the charge of carrying a weapon. Although appellant challenged the denial of this motion in his second point on appeal, double-jeopardy concerns require that we review arguments regarding the sufficiency of the evidence first. *Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008). A challenge to the sufficiency of the evidence asserts that the verdict was not supported by substantial evidence. *Sales v. State*, 374 Ark. 222, 289 S.W.3d 423 (2008). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Reese v. State*, 371 Ark. 1, 262 S.W.3d 604 (2007). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

A person commits the offense of carrying a weapon if he possesses a handgun, knife, or club on or about his person, in a vehicle occupied by him, or otherwise readily available for use with a purpose to employ the handgun, knife, or club as a weapon against a person. Ark.Code Ann. § 5–73–120(a). The statute defines a "club" as "any instrument that is specially designed, made, or adapted for the purpose of inflicting serious physical injury or death by striking." § 5–73–120(b)(1). On appeal, appellant asserts that neither the baseball bat nor the landscaping tool meet the definition of a club because there was no evidence that the items had been adapted for the purpose of inflicting serious physical injury or death by striking. The State responds by arguing that appellant has changed his argument on appeal and, thus, his argument is not preserved for this court's review.

Rule 33.1 of the Arkansas Rules of Criminal Procedure provides, in pertinent part:

(b) In a nonjury trial, if a motion for dismissal is to be made, it shall be made at the close of all of the evidence. The motion for dismissal shall state the specific grounds therefor. If the defendant moved for dismissal at the conclusion of the prosecution's evidence, then the motion must be renewed at the close of all of the evidence.

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment.

Ark. R.Crim. P. 33.1(b) & (c) (2009). In this case, the argument that appellant raises on appeal was raised below, but it was not raised in his motion to dismiss at the close of the evidence. Instead, the argument was made in the context of a motion for "suppression of the weapons" along with his motion to suppress. In his motion to dismiss, which was made at the close of the State's case and renewed at the close of all the evidence, he only argued that there was no evidence that he had intended to use either the baseball bat or the landscaping tool as a weapon or that he did use either item as a weapon. This is clearly not the argument now being raised on appeal. Our case law is well-settled that a party cannot change the grounds for an objection on appeal, but is bound by the scope and nature of the arguments presented at trial. *Lawshea v. State*, 2009 Ark. 600, 357 S.W.3d 901.

Appellant contends, however, that his argument is preserved, arguing that he made three motions to dismiss with regard to the charge of carrying a weapon: one during the suppression hearing stage of

the trial, the second at the close of the State's case, and a third at the close of all the evidence. Appellant argues that his renewal of all his motions, made at the close of all the evidence, encompasses the argument he made at the suppression hearing. This argument is flawed, however, because Rule 33.1 is clear that in a bench trial, motions for dismissal shall be made at the conclusion of all the evidence, or, in the alternative, at the close of the State's evidence and renewed at the close of all the evidence, and a failure to challenge the sufficiency of the evidence *at the times and in the manner required* in subsection (b) will constitute a waiver of the question of sufficiency. A motion to dismiss made during a suppression hearing and before the completion of the State's case-in-chief is simply not contemplated by the rule. We therefore find that appellant's argument on this point is not preserved for our review.

 Next, we address appellant's argument that the circuit court erred in denying his motion to suppress. In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003). A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Lee v. State,* 2009 Ark. 255, 308 S.W.3d 596. We defer to the superiority of the circuit judge to evaluate the credibility of witnesses who testify at a suppression hearing. *Montgomery v. State,* 367 Ark. 485, 241 S.W.3d 753 (2006).

On appeal, appellant argues that the evidence used against him was obtained in violation of Rules 3.1 and 2.2 of the Rules of Criminal Procedure, and thus the evidence should have been suppressed. Appellant first asserts that the evidence was obtained in violation of Rule 3.1 because the officer's approach to his vehicle was not based on any specific, particularized, and articulable reasons that indicated appellant or his vehicle were involved in criminal activity. Rule 3.1 provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

"Reasonable suspicion" is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R.Crim. P. 2.1. Our case law has established that whether an investigative stop is justified depends on whether, under the totality of the circumstances, the police have a specific, particularized, and articu-

lable reason indicating that the person may be involved in criminal activity. *Davis, supra.* In addition, the Arkansas legislature has codified factors to be considered when determining whether an officer has grounds to "reasonably suspect" a person is subject to detention pursuant to Rule 3.1. These factors include, but are not limited to, the following:

(1) The demeanor of the subject;

(2) The gait and manner of the subject;

(3) Any knowledge the officer may have of the suspect's background or character;

(4) Whether the suspect is carrying anything, and what he or she is carrying;

(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;

(6) The time of the day or night the suspect is observed;

(7) Any overheard conversation of the suspect;

(8) The particular streets and areas involved;

(9) Any information received from third persons, whether they are known or unknown;

(10) Whether the suspect is consorting with others whose conduct is reasonably suspect;

(11) The suspect's proximity to known criminal conduct;

(12) The incidence of crime in the immediate neighborhood;

(13) The suspect's apparent effort to conceal an article;

(14) The apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.

Ark.Code Ann. § 16–81–203.

In his argument, appellant cites *Jennings v. State,* 69 Ark.App. 50, 10 S.W.3d 105 (2000), in which the court of appeals reversed the denial of a motion to suppress after finding that the officer did not have a reasonable suspicion to detain and conduct a pat-down search of the defendant. In *Jennings,* the defendant was standing with another young man in a no-loitering area, at an intersection know for drug trafficking. The officer knew the other individual was a high-school student, so she stopped and asked the two what they were doing, and they stated that they were waiting for the bus. The officer asked for the defendant's identification, and then confiscated a flask of alcohol that she saw in the possession of the student. At that point, she decided to do a pat-down search for her own safety, and although both men stated that they had no weapons, the officer found a small handgun at the defendant's waistline. He was immediately placed under arrest and later searched; the search of his person revealed two small plastic bags of cocaine.

In reversing the denial of the defendant's motion to suppress, the court of appeals found that the defendant had been in the wrong place at the wrong time and that there was no indication that he was committing, had committed, or was about to commit a felony or a misdemeanor involving danger of forcible injury. The court of appeals concluded that the officer had no reasonable suspicion to stop appellant under Rule 3.1. The holding in *Jennings* was based on this court's decision in *Stewart v. State,* 332 Ark. 138, 964 S.W.2d 793 (1998), in which we similarly reversed the denial of a motion to suppress. In *Stewart,* an officer observed Stewart standing on the corner outside her home, which was in a high-drug-traffic area, at approximately 1:45 a.m. The officer asked her to remove her hands from her coat pockets and walk toward the police car. As she approached the car, she placed her right hand inside her coat pocket two or

three times, despite repeated requests to not do so. Based on that behavior, the officer believed she may have had a weapon and performed a pat-down search, finding a matchbox containing two rocks of crack cocaine. This court held that there was nothing about Stewart's actions or demeanor that indicated she was involved in any type of illegal activity, that she was merely standing in the wrong place at the wrong time, and the fact that she repeatedly put her hands in her pockets could not be used to justify the stop, as the behavior occurred after the officer had already stopped and asked her to approach the car.

In this case, appellant argues that his case is factually analogous to *Jennings*. Appellant was legally parked at a department store during its regular business hours, and based on Officer Baker's testimony, he was only suspicious of appellant because he had backed into a parking space. Appellant contends that there was nothing about his behavior that would give rise to reasonable suspicion and that Baker had no specific, particular, or articulable reason to approach him. According to appellant, Baker approached him under the same flawed reasoning employed by the officer in *Jennings*, which was merely to see if the defendant was doing anything wrong.

Appellant also cites *Mathis v. State*, 73 Ark.App. 90, 40 S.W.3d 816 (2001), in which the defendant was stopped and detained after he drove his vehicle near a place being searched for methamphetamine manufacturing items pursuant to a search warrant. A subsequent search of the defendant's person revealed a handgun, two small bags of white powder, and a marijuana pipe, and a search of the vehicle revealed two bags of marijuana and a sawed-off shotgun. In reversing the denial of the motion to suppress, the court of appeals held that the defendant's presence within 20 to 30 feet of an area that was being searched, at 10:00 p.m., and the officer's testimony that he knew defendant and knew that methamphetamine had been manufactured at the place being searched, did not provide reasonable suspicion for an investigatory stop pursuant to Rule 3.1.

Appellant argues that the instant case is similar to *Mathis* because, much like the facts of *Mathis*, there was nothing unusual about the time of appellant's presence at the department store. Further, appellant argues that none of the robberies investigated by the task force had taken place at the department store, nor did any of the descriptions given by witnesses to the other robberies describe a vehicle similar to appellant's. Appellant asserts there was nothing about his presence there that would lead the officer to believe he was associated with the robberies that the officer had been assigned to investigate and that the officer had no more than a bare suspicion of any wrongdoing. And finally, appellant argues that, when considering the factors enumerated in Ark.Code Ann. § 16–81–203, appellant's behavior brings only one factor into play, namely proximity to criminal conduct. Appellant contends that this is insufficient to provide an officer with reasonable suspicion.

Appellant also argues that the evidence in this case was obtained in violation of Ark. R.Crim. P. 2.2, which provides:

(a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

(b) In making a request pursuant to this rule, no law enforcement officer shall indicate that a person is legally obligat-

ed to furnish information or to otherwise cooperate if no such legal obligation exists. Compliance with the request for information or other cooperation hereunder shall not be regarded as involuntary or coerced solely on the ground that such a request was made by a law enforcement officer.

Ark. R.Crim. P. 2.2 (2009). An encounter under Rule 2.2 is permissible only if the information or cooperation sought is in aid of an investigation or the prevention of a particular crime. *Stewart, supra.* Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the fourth amendment; however, if an officer restrains the liberty of a person by means of physical force or show of authority, the encounter ceases to be consensual and becomes a "seizure." *See Thompson v. State,* 303 Ark. 407, 797 S.W.2d 450 (1990). Appellant asserts that, in this case, the officer's approach to his vehicle was a seizure that was not based upon any investigation or prevention of a particular crime.

In response, the State asserts that appellant's reliance on Rule 2.2 is inapposite, as the greater suspicion to support appellant's detention under Rule 3.1 includes that necessary to approach or detain him under Rule 2.2. With regard to Rule 3.1, the State argues that reasonable suspicion existed because of (1) appellant's suspicious behavior, (2) the time of day in which the officer saw appellant, (3) appellant's movement in reaching down when the officer shined a light on him, (4) the fact that appellant was carrying a weapon, and (5) the fact that crime was a significant problem in the area where appellant's truck was parked. For support, the State cites *Jefferson v. State,* 349 Ark. 236, 76 S.W.3d 850 (2002), in which this court affirmed the denial of a motion to suppress. In *Jefferson,* police officers were patrolling a trailer park, which had been the subject of numerous complaints of criminal activity, at approximately 2:00 a.m. and observed Jefferson emerge from between two trailers. Upon seeing the officers, Jefferson appeared startled, changed his direction of travel, and quickened his pace. One officer stepped out of the patrol car and called to Jefferson to come to the car; however, he did not turn towards their car until told to do so a second time. As he approached the patrol car, he put his hand in his pocket, which caused the officer to draw his weapon, and when he took his hand out of his pocket, he dropped something, later discovered to be a pill bottle containing crack cocaine, on the ground. This court held that the stop did fall under the ambit of Rule 3.1 and that the officers had a reasonable suspicion that criminal activity was afoot.

The State argues that the present case is not unlike *Jefferson,* and in fact presented more danger to the officer because appellant was in a car and not out in the open. Crime was also a significant problem in the area where appellant was parked, and appellant reached down once the officer shined a light on him, which gave the officer reason to be concerned for his safety. In addition, this incident occurred in the evening, the same time of day that the robberies had been committed.[4] These facts, combined with appellant's suspicious behavior of backing into a parking spot in a dark area of the parking lot, gave the officer reasonable suspi-

---

4. The State also cites the "fact" that appellant's engine was running as further support of reasonable suspicion. However, there appears to be no testimony from either officer that the engine of appellant's truck was running; instead, it appears this "fact" was erroneously stated by counsel at trial. Therefore, it will not be considered as a factor in this analysis.

cion to approach appellant's vehicle. The State also asserts that multiple factors under § 16–81–203 were present: the particular area involved; the proximity to known criminal conduct; the incidence of crime in the immediate neighborhood; the time of night appellant was observed; appellant's apparent effort to conceal an article; and the fact that appellant was carrying a weapon.[5]

This court has explained that police-citizen encounters can be classified into three categories:

> The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the fourth amendment. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause.

*Thompson,* 303 Ark. at 409, 797 S.W.2d at 451–52 (citing *U.S. v. Hernandez,* 854 F.2d 295 (8th Cir.1988)). In *Thompson,* a police officer noticed Thompson's vehicle while on patrol at 1:30 a.m. The vehicle was parked legally on the street with its lights on and the motor running. Ten minutes later, the officer passed by again, and the vehicle was still parked with its lights on

and the motor running, so the officer stopped his patrol car behind Thompson's vehicle and approached to investigate. As a result, Thompson was eventually arrested for and convicted of DWI, and on appeal, he argued that the officer's approach constituted a seizure that was unlawful under the fourth amendment. This court disagreed and found that the officer's approach to investigate Thompson's car fit the first category of police-citizen encounters, and thus was not a "seizure" within the meaning of the fourth amendment. This court also recognized that "[t]he authority for a police officer to act in this type of nonseizure encounter is recognized in Ark. R. Civ. P. 2.2(a)." *Thompson,* 303 Ark. at 410, 797 S.W.2d at 452. *See also Baxter v. State,* 274 Ark. 539, 543, 626 S.W.2d 935, 937 (1982) (explaining that Rule 2.2 is a "codification and an accommodation of" a police officer's interest in approaching any citizen pursuant to his investigative law enforcement function).

The court of appeals has also considered facts similar to the case at bar in *Adams v. State,* 26 Ark.App. 15, 758 S.W.2d 709 (1988). In *Adams,* an officer was on routine patrol at 6:30 p.m. when he noticed a car, with no lights on, parked in a dark area near a high school. The officer saw that the vehicle was occupied but the motor was not running although the weather was cold. Because of these facts, and because there had been several burglaries in the area, the officer pulled in behind the car and turned his spotlight on it. The officer approached the driver's side, tapped on the window, and asked for identification from the two occupants. When the driver rolled down the window, the officer smelled a strong odor of marijuana.

---

5. We disagree in part with the State's assessment of the facts supporting reasonable suspicion in this case; clearly, the fact that appellant was carrying a "weapon" is something that was discovered after the officer's approach and therefore cannot be used to support reasonable suspicion.

While waiting for backup to arrive and running the occupants' driver's licenses, the officer observed the male passenger, Adams, making unusual movements as if he were stuffing something down the front of his pants. The officer asked the passenger to step out of the vehicle and frisked him, finding a large plastic bag containing several smaller bags of marijuana, two roach clips, and some scales. Adams was later convicted of possession of a controlled substance with intent to deliver and possession of drug paraphernalia.

On appeal, Adams argued that the officer's investigation of the car was not supported by reasonable suspicion and thus unlawful under Rule 3.1. The court of appeals, however, disagreed that the case was required to be judged by Rule 3.1, instead finding that the initial investigation was justified pursuant to Rule 2.2, and once the car window was rolled down and the officer smelled marijuana, he had a reasonable suspicion that the occupants were committing, had committed, or were about to commit a crime which authorized the officer to detain them pursuant to Rule 3.1.

In the present case, we find that, similar to the initial investigations in *Thompson* and *Adams,* Officer Baker's initial approach to investigate appellant's vehicle was lawful pursuant to Rule 2.2. And, upon seeing appellant's movement in reaching down when the officer shined his lights on him, combined with the other factors present, namely (1) the vehicle was backed into a parking spot in a dark area of the parking lot, (2) in the evening, and (3) in an area that recently had a high incidence of armed robberies, in which the police suspected that a possible get-away

car was being used, Officer Baker had a reasonable suspicion that justified detaining appellant pursuant to Rule 3.1. We therefore affirm the circuit court's denial of appellant's motion to suppress.

Affirmed; Court of Appeals reversed.

HANNAH, C.J., and SHEFFIELD, J., dissent.

HANNAH, C.J., dissenting.

I respectfully dissent. While on patrol, Officer Ryan Baker entered Kohl's parking lot and saw a truck parked in a location he subjectively thought might indicate Kohl's was being robbed, and he seized the truck and its occupant by blocking it with his police car.[1] No specific, particularized, and articulable reasons indicating that Cockrell was involved in criminal activity, or that his truck was involved in criminal activity, existed at the time of the seizure and none have been offered by the State on appeal. Contrary to law, Baker seized Cockrell and his truck based on conjectural suspicion that Cockrell was involved in a robbery of Kohl's. No robbery was taking place.

The other facts cited by the majority to support the seizure arose after Cockrell and his truck were seized and are irrelevant to the analysis on the seizure. When Baker blocked Cockrell's truck, Baker could not see Cockrell. It was only after Baker seized Cockrell's truck by blocking it that he turned on his takedown lights, saw Cockrell, and thought he was reaching for something on the floorboard. More speculative yet is the majority's listing of the possibility of the truck being a getaway vehicle for a robbery as a factor present justifying the seizure. As already

---

1. Baker testified that he "pulled into the parking lot and parked directly in front of his car." He also testified that Cockrell "didn't try to put the vehicle in drive and run away, because he was unable to do so." Clearly, Baker testified that he had seized Cockrell's truck upon pulling into the lot.

noted, no robbery was taking place and, in any event, the idea Cockrell's vehicle might be a getaway vehicle came from Officer Madison who was not even present at the time of the seizure.

Before police may restrain a person, even for a short time, there must be an "articulable suspicion" that the person has committed or is about to commit a crime. *Dowty v. State,* 363 Ark. 1, 10, 210 S.W.3d 850, 855 (2005). Articulable suspicion is also characterized as reasonable suspicion. *See Laime v. State,* 347 Ark. 142, 60 S.W.3d 464 (2001). Articulable or reasonable suspicion may not exist in isolation: it "must be tied to the commission of a felony or a misdemeanor involving forcible injury to persons or property." *Id.* at 154, 60 S.W.3d at 473. The suspicion must be more than imaginary or conjectural suspicion, in that "the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Id.,* 60 S.W.3d at 473.

Baker testified that he believed that the white truck "was involved in these robberies"; however, he offered no facts to support his conclusion. He further testified that "the way he [Cockrell] was parked in the area that he was parked indicated some type of criminal activity that may be taking place. I suspected a robbery." But Baker admitted that he had no information "that this vehicle and Mr. Cockrell had been involved in any kind of drug deal or robbery or anything like that." He had no information that the truck was anything other than a truck parked in the lot. He also testified that Cockrell was not seized, that Cockrell "was free to leave, his vehicle wasn't." This testimony that Cockrell was not seized is not credible.

The majority concludes that Officer Baker's approach to investigate Cockrell's vehicle was lawful under Arkansas Rule of Criminal Procedure 2.2; however, Baker approached to seize the truck by blocking it, not to engage in a consensual encounter and request cooperation under Rule 2.2. Rule 2.2 is irrelevant. This case concerns a seizure not an investigation. Arkansas Rule of Criminal Procedure 3.1 is applicable because stopping and retention of persons is at issue. The majority notes that when Baker turned on his takedown lights, he saw Cockrell reaching down. However, as already noted, Cockrell was seized before Officer Baker saw this. Nothing observed after the seizure can be used to justify or bolster Baker's decision to seize Cockrell.

No "specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity" were offered in this case. The seizure was illegal.

This case should be reversed and remanded.

SHEFFIELD, J., joins.